UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF:<br>MARQUETTE TRANSPORTATION COMPANY<br><br>THIS DOCUMENT RELATES TO: ALL CASES | CIVIL ACTION<br><br>NO. 15-2316<br><br>SECTION "L" (1) |

**ORDER & REASONS**

Before the Court is a motion filed by Defendant Marquette Transportation Company ("Marquette"). R. 117. The motion addresses the seaman status of Joseph Solomon, a personal injury Plaintiff who filed a cross-claim in *In re Marquette,* No. 15-2316. Marquette argues that Solomon is a seaman, such that Kostmayer Construction, LLC ("Kostmayer") is liable for his injuries as Solomon's employer. Solomon's employers[1], Ameri-Force Craft Services, Inc. and Signal Mutual Indemnity Association ("Ameri-Force") oppose the Motion. R. 137. Kostmayer also opposes the Motion, and adopts Ameri-Force's response. R. 151. Finally, Plaintiff Solomon responds. R. 157.

**I. BACKGROUND**

These consolidated cases involve two accidents that occurred on two separate dates on the Mississippi River. First, on September 22, 2014, the M/V Blake Denton, operated by Defendant Marquette Transportation Company, struck the Barge CP-12, chartered to Plaintiff Kostmayer, and pushed the CP-12 into Barge OU-701, also owned by Kostmayer. R. 1-1 at 1. Both of Plaintiff's

---

[1] There is some dispute over which company was Solomon's employer at the time of the accident. However, it is not necessary to address this issue at this stage in the proceeding.

1

barges were tied to a dock in the Mississippi River in East Baton Rouge Parish when Barge CP-12 was struck by the M/V Blake Denton, which was traveling southbound with approximately thirty-five barges in tow. R. 1-1 at 1–2. Barge CP-12 was pushed into Barge OU-701, and both barges detached from the dock and floated freely downriver until a tow boat pushed them to the east bank. R. 1-1 at 2. Kostmayer alleged that the barges sustained substantial damage as a result of the impact and required extensive repairs. R. 1-1 at 2.

Plaintiff Kostmayer invoked the Court's jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1333, and asserted multiple negligence theories based on the actions of the captain and crew manning Defendant's vessel: (1) inattentiveness to their duties, (2) failing to see what they should have seen, (3) failing to maintain control of the towed barges, and (4) any other acts of negligence. R. 1-1 at 2. Kostmayer sought property damages, including the cost of repairs, loss of use, and lost profits. R. 1-1 at 2.

Marquette denied all allegations of negligence and asserted a number of affirmative defenses. R. 5 at 3. First, Marquette avers that Plaintiff's barges and the dock were obstructions to navigation. R. 5 at 3. Marquette also alleges that the damages sustained by Plaintiff's barges resulted from unrelated incidents or from normal wear and tear. R. 5 at 3. Marquette alleges that Kostmayer's damages were caused solely or in part by its own fault or negligence, including failure to maintain a proper lookout, violations of the U.S. Inland Navigation Rules and other regulations, and failure to properly moor the barges without obstructing the channel. R. 5 at 4.

A second and unrelated accident between Kostmayer and Marquette occurred on December 29, 2014. In this accident, Marquette was operating the M/V Myra Eckstein near the Terminal 234 Dock Facility on the Mississippi River in Baton Rouge, LA. According to Kostmayer's Petition in state court, the M/V Myra Eckstein "contacted" two other crane barges operated by Kostmayer.

At the time of the accident, the cranes were spudded down, or anchored, in the Mississippi River, in relation to work Kostmayer was completing on a mooring dolphin attached to the CEMUS dock near the I90 bridge in Baton Rouge. Plaintiffs James Ainsworth ("Ainsworth") and Michael Bankston ("Bankston") were employed by Kostmayer as welders, while Joseph Solomon ("Solomon") was employed by Ameri-Force and assigned to work for Kostmayer. At the time of the accident, Ainsworth and Bankston were eating lunch on the MS Darlene, while Solomon was working on the MS Ashley, the two crane barges involved in the accident. Solomon avers that when the M/V Myra Eckstein allided with the barge where he was working, he sustained personal injuries. Solomon seeks various damages, including loss of earnings and earning capacity, pain and suffering, and mental anguish.

Plaintiff Kostmayer has resolved its claims against Marquette. Similarly, Plaintiffs Ainsworth and Bankston have resolved their personal injury claims. Thus, the Court need only address the seaman's status of Plaintiff Solomon.

## II. PRESENT MOTIONS

### a. Defendant's Motion for Partial Summary Judgment as to Seaman Status of Joseph Solomon (R. 117)

Marquette seeks partial summary judgment that Plaintiff Joseph Solomon is a Jones Act seaman such that Kostmayer, as his employer, is liable for any injuries he may have sustained. R. 116-1 at 1. Further, Marquette contends that if Solomon is a seaman, he may be partially at fault for failing to maintain a lookout on the day of the accident. R. 116-1 at 1. Marquette argues that Solomon meets the two-part test for seaman, as his duties contributed to the function of the vessel or accomplishment of its mission, and he had a substantial connection to the vessel both in terms of duration and nature. R. 116-1 at 4 (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995)). First, Marquette explains that this particular fleet of vessels included two crane barges, a material

3

barge, a tug boat, and a flat boat, which moved as a unit to the construction site. R. 116-1 at 2-3. According to Marquette, Solomon directly contributed to the mission of the fleet, as his installation work was necessary to build the mooring dolphin. R. 116-1 at 2. Further, Marquette argues that Solomon had a substantial connection to this fleet of vessels, such that he qualifies for seaman's status.

Marquette explains that Solomon was not employed directly by Kostmayer, but instead by Ameri-Force, and was assigned to work for Kostmayer as the operator of a crane known as a cherry picker. R. 117-1 at 1-2. Solomon worked ten hours a day, six days a week, and was assigned to the MS Ashley, one of the barges involved in the accident, the entire time he worked for Kostmayer. R. 117-1 at 2. Marquette argues that the MS Ashley was one of the crane barges in the same fleet of vessels that Ainsworth and Bankston were assigned. Like the other personal injury plaintiffs, Solomon did not walk onto the barge each day for work, but either took a boat or a man-lift. R. 117-3.

Marquette argues that like the Plaintiff in *Navarre v. Kostmayer Constr. Co.*, these facts demonstrate Solomon had substantial contacts with the fleet of vessels to satisfy the two-prong test for seaman status. 52 So.3d 921, 925 (La. App. 4th Cir. 2010).[2] R. 116-1 at 4. Further, Marquette contends that Solomon was assigned to the barge a majority of the time, and the fact that he could have been assigned to another vessel does not change his status as seaman. R. 116-1 at 6-7 (citing *Manuel v. P.A.W. Drilling & Well Service, Inc.*, 135 F.3d 344, 352 (5th Cir. 1998) (holding Plaintiff who had been assigned to a rig for the entire two months leading up to the

---

[2] In *Navarre v. Kostmayer Construction Co.*, the Louisiana Fourth Circuit held that a Kostmayer welder was a seaman. The Court explained that because he rode to and from the barge each day on an outboard motor boat, remained on the barge as it was moved to various job sites, and spent 60-70% of his workdays on the barge, he had a substantial connection to the barge. In particular, the Court emphasized that the circumstances of his injury indicated he was a seaman, as he was injured on the vessel while actively engaged in the "mission" of the vessel. 52 So. 3d 921, 925 (La. App. 4th Cir. 2010).

accident was a seaman, even though he could have been reassigned to another vessel)). Finally, Marquette argues Solomon was injured while working over water, which demonstrates he was exposed to the "perils of the sea." R. 116-1 at 8-9.

### a. Ameri-Force Craft Services, Inc. and Signal Mutual Indemnity Association's Opposition (R. 137/152)

Ameri-Force opposes Marquette's Motion and argues there is insufficient evidence whether Solomon's work on the vessel was incidental to his work as a welder at a construction site, and whether Kostmayer had sufficient control over his work to preclude him from borrowed servant status. R. 137 at 1. Further, Ameri-Force argues that this motion is premature, as they have not had adequate time to use discovery to determine whether Solomon is a Jones Act seaman.[3]

Ameri-Force explains that at the time of the accident, Solomon was working on a stationary barge owned by Kostmayer. R. 137 at 2. When he was injured, Ameri-Force and its insurer, Signal, paid benefits under the Longshore and Harbor Worker's Compensation Act ("LHWCA"), which Solomon accepted. R. 137 at 2. Ameri-Force filed an answer and seeks to recover on its lien under the LHWCA. However, if Solomon is a Jones Act seaman, then he is owed maintenance and cure under the Jones Act rather than the benefits he was paid under the LHWCA. Additionally, whether Solomon is a borrowed servant of Kostmayer will determine who is liable for his maintenance and cure payments. R. 137 at 3.

Ameri-Force argues that as the bulk of this litigation has addressed property damage and loss of use, very little discovery has been done regarding the status of the personal injury Plaintiffs. As such, Ameri-Force avers that the only evidence on this issue is the testimony Solomon provided during his deposition, which states he was hired by Ameri-Force and assigned to work on the

---

[3] Marquette's Motion regarding the seaman's status of the personal injury Plaintiffs was filed on November 16, 2016. The Court gave the parties until January 16, 2017 to submit their oppositions. Therefore, they have had two months to complete additional discovery on these issues.

5

Kostmayer vessel. R. 137 at 3-4. He received some work instructions from Josh Bankston, a Kostmayer employee[4], and other instructions from Ameri-Force employees. R. 137 at 4. Further, Solomon explained that he did not sleep or eat on the vessel and was never on the vessel while it was moving to other construction sites along the river. Ameri-Force argues that he was not a member of the crew, but a welder who worked on a platform that "happened to be [a] stationary barge[]." R. 137 at 5. Thus, Ameri-Force argues that Solomon is not a seaman, but a welder whose work on the barge was incidental to his job as a construction worker.[5] R. 137 at 6.

Instead, Ameri-Force argues that Solomon is a longshoreman, as defined in the LHWCA, as his injuries occurred in an area typically used by longshoreman while he was engaged in maritime employment. R. 137 at 8 (citing *Richard v. Mike Hooks*, 799 So.2d 466 (La. 2001) (holding Plaintiff was not seaman after evaluating the totality of the circumstances and determining Plaintiff was not exposed to the perils of the sea)). Ameri-Force argues that because Solomon only worked on stationary barges, his work aboard the vessels was incidental to his overall work as a welder. R. 137 at 10.

Next, Ameri-Force argues that there is insufficient evidence to determine whether Solomon was a borrowed servant of Kostmayer. R. 137 at 11. According to Ameri-Force, to determine if a borrowed servant relationship exists, the Court should consider the amount of control the borrower has over the servant, whether there is such an agreement between the borrower and the lender, whether the servant believes he is employed by the borrower, whether the general employer temporarily terminates employment; who supplied the necessary job tools;

---

[4] Ameri-Force explains that Josh Bankston, Michael Bankston's brother, was an Ameri-Force employee. However, based on Solomon's deposition, this appears to be a typographical error. See R. 137, Ex. 1, Solomon Deposition, p. 81, ln. 15-16. Both Bankstons were employed directly by Kostmayer.

[5] Ameri-Force also argues that the timing of the motion is prejudicial, as they do not have adequate time to complete discovery on these issues. R. 137 at 6-7.

the length of employment, and who paid the servant's wages. R. 137 at 12 (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 313 (5th Cir. 1969)). Ameri-Force argues that Marquette has not provided any evidence regarding Solomon's employer, other than the fact that a Kostmayer employee supervised Solomon and Ameri-Force handled his payroll and LHWCA claim. R. 137 at 12. Thus, Ameri-Force contends that summary judgment on this issue is premature.

### b. Kostmayer's Opposition (R. 151)

Kostmayer contends that the timing of Marquette's motions "is prejudicial to all parties and should be denied." R. 151 at 1. Kostmayer explains that Marquette initially filed a "Complaint for Exoneration From, or Alternatively, Limitation of Liability," after the December, 2014 incident. R. 151 at 2. The personal injury Plaintiffs then filed answers and counter-claims against Marquette seeking to recover damages for personal injuries. R. 151 at 2. Kostmayer avers that after all the discovery regarding liability was completed, Marquette then filed this motion regarding the seaman status of these Plaintiffs, despite the fact that the Plaintiff themselves had not sought seaman status. R. 151 at 2. Kostmayer argues that because these motions were filed so late, the parties have not had a sufficient opportunity to discover facts related to the seaman status of the personal injury Plaintiffs. In support of this argument, Kostmayer adopts Ameri-Force's motion as it relates to this issue.

### c. Plaintiff Solomon's Response (R. 157)

Plaintiff Solomon responds, and objects to the motion to the extent Marquette seeks to use Solomon's seaman status as an affirmative defense to his personal injury claims. R. 157 at 1. Solomon avers that this defense is untimely, and adopts Kostmayer's opposition to the extent it addresses these issues. R. 157 at 2.

### III. LAW AND ANALYSIS

#### a. Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.' " *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

### b. Standard for Establishing Seaman Status

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The Jones Act does not define the term "seaman," therefore, courts have been left to determine exactly which maritime workers are entitled to the special protections that the Jones Act provides. *See Chandris v. Latsis*, 515 U.S. 347, 354 (1995). The Supreme Court has determined that seaman status requires: (1) that the employee's duties contribute to the function of a vessel in navigation (or identifiable group of vessels) or to the accomplishment of its mission and (2) that the connection be substantial in terms of both its nature and duration. *See Chandris*, 515 U.S. at 368. The purpose of the test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id*. at 371.

The "substantial connection" inquiry includes a temporal element. *Chandris*, 515 U.S. at 371. In *Chandris*, the Supreme Court adopted the Fifth Circuit's "rule of thumb": "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id*. The Court warned, however, that this figure is a "guideline" and that "departure from it will certainly be justified in appropriate cases." *Id*. The Court must still examine the "total circumstances of an individual's employment" to determine "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id*. at 369.

### c. Discussion

As a preliminary matter, it is worth noting that Solomon himself has not sought seaman's

status, nor did he initially elect to proceed as a seaman in this matter. Instead, this issue has been raised by a third party, after a substantial amount of discovery was already completed in this case. Turning to the merits of the motion, whether Solomon is a seaman is a question of fact. Plaintiff Solomon must indicate how much time he was assigned to these particular vessels, how much time he spent on a given vessel, and whether he was exposed to the perils of the sea. *Chandris*, 515 U.S. at 371.

Based on the limited facts available on this issue, Solomon may have been "substantially connected" to the vessel. At the time of the accident, he had worked at Kostmayer only two months, but had been assigned to this group of vessels the entire time he was working for Kostmayer. While he did not eat or sleep on the vessel, he was ferried to work every day either by a boat or a man-life. However, Solomon did not elect to pursue his claims as a seaman, but instead chose to seek remedies as a longshoreman.

While some facts may support a finding that Solomon is entitled to seaman's status, the Court finds that the factual record is too underdeveloped to resolve this issue via summary judgment. During oral argument, the parties indicated they have not had an opportunity to conduct discovery regarding the conditions of Plaintiff's employment and specific job duties. That, combined with the fact that Plaintiff is not himself seeking seaman's status, indicates this issue is not ripe for summary judgment.

Furthermore, Ameri-Force is correct that summary judgment regarding whether Solomon was a borrowed employee is premature at this time. The scant evidence on this point, namely that Solomon received some instructions from Kostmayer staff and some from Ameri-Force, while Ameri-Force handled his payroll and human resource materials, is inconclusive to determine who employed him at the time of the accident. Because there are genuine disputes of material fact as to

whether Solomon had a substantial connection to a vessel or was exposed to the perils of the sea, in addition to factual questions regarding Plaintiff Solomon's employer, summary judgment is not appropriate on either issue at this time.

### IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Marquette's Motion for partial summary judgment with respect to the seaman's status of Plaintiff Joseph Solomon, R. 117, is **DENIED**.

As Plaintiffs Ainsworth and Bankston have resolved their claims, Marquette's Motion for partial summary judgment with respect to the seaman's status of Plaintiffs Ainsworth and Bankston, R. 116, is **DISMISSED AS MOOT.**

New Orleans, Louisiana, this 29th day of March, 2017.

_____
UNITED STATES DISTRICT COURT JUDGE