UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF:<br>MARQUETTE TRANSPORTATION COMPANY | CIVIL ACTION<br><br>NO. 15-2316<br><br>SECTION "L" (3) |

## ORDER & REASONS

Before the Court is Marquette Transportation Company's ("Marquette") Motion for Partial Summary Judgment. R. Doc. 252. Kostmayer Construction ("Kostmayer") responds in opposition. R. Doc. 263. Also before the Court is Kostmayer's Motion for Summary Judgment. R. Doc. 253. Marquette responds in opposition. R. Doc. 261. Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

### I. BACKGROUND

These consolidated cases involve two accidents that occurred on the Mississippi River on two separate dates. First, on September 22, 2014, the M/V BLAKE DENTON, operated by Defendant Marquette struck the Barge CP-12, chartered to Plaintiff Kostmayer, and pushed the CP-12 into Barge OU-701, also owned by Kostmayer. R. Doc. 1-1 at 1. Both of Plaintiff's barges were tied to a dock in the Mississippi River in East Baton Rouge Parish when Barge CP-12 was struck by the M/V BLAKE DENTON, which was traveling southbound with approximately thirty-five barges in tow. R. Doc. 1-1 at 1–2. Barge CP-12 was pushed into Barge OU-701, and both barges detached from the dock and floated freely downriver until a tow boat pushed them to the east bank. R. Doc. 1-1 at 2. Plaintiff alleges that the barges sustained substantial damages as a result of the impact and required extensive repairs. R. Doc. 1-1 at 2.

A second and unrelated accident occurred on December 29, 2014. In this accident, Marquette was operating the M/V MYRA ECKSTEIN near the Terminal 234 Dock Facility on the Mississippi River in Baton Rouge, LA. According to Kostmayer's Complaint, the M/V MYRA ECKSTEIN "contacted" two other crane barges operated by Kostmayer. At the time of the accident, the crane barges were spudded down, or anchored, in the Mississippi River, in relation to work Kostmayer was completing on a mooring dolphin attached to the CEMUS dock near the 190 bridge in Baton Rouge. Plaintiffs James Ainsworth ("Ainsworth") and Michael Bankston ("Bankston") were employed by Kostmayer as welders, while Joseph Solomon ("Solomon") was employed by Ameri-Force and assigned to work for Kostmayer. At the time of the accident, Ainsworth and Bankston were eating lunch on the MS DARLENE, while Solomon was working on the MS ASHLEY, the two crane barges involved in the accident. Solomon avers that when the M/V MYRA ECKSTEIN allided with the barge where he was working, he sustained personal injuries. Solomon seeks various damages, including loss of earnings and earning capacity, pain and suffering, and mental anguish and emotional trauma.

The present motions consider the seaman and borrowed employee status of Plaintiff Solomon.

## II. PRESENT MOTIONS

### a. Defendant Marquette's Motion for Partial Summary Judgment (R. Doc. 252)

Defendant Marquette requests that the Court grant partial summary judgment as to the seaman status of Plaintiff Solomon. R. Doc. 252. Marquette alleges that Plaintiff Joseph Solomon is a Jones Act seaman and that Kostmayer was his Jones Act employer. R. Doc. 252. First, Marquette argues that Solomon is a Jones Act seaman because he performed the majority of his work from a barge, had a substantial connection to a vessel on the Mississippi River, and

contributed to the accomplishment of the mission of that vessel. R. Doc. 252-1 at 9-10. Second, Marquette argues that Kostmayer was Solomon's Jones Act employer because Kostmayer had the power to control and direct Solomon's work. R. Doc. 252-1 at 13. Plaintiff Solomon adopts Marquette's position that he is a Jones Act seaman and was the borrowed employee of Kostmayer. R. Doc. 262.

Kostmayer responds arguing that the barge on which Plaintiff Solomon worked was not a vessel because it was always stationary when Plaintiff Solomon worked on it and its primary function was not transportation on water. R. Doc. 263 at 4-5.

### b. Kostmayer's Motion for Summary Judgment (R. Doc. 253)

Kostmayer requests that the Court dismiss Plaintiff Solomon's Jones Act claims against it on the basis that he does not meet the requirements for seaman status. R. Doc. 253. Kostmayer argues that Solomon is not a Jones Act seaman because the barges on which he worked were not vessels. R. Doc. 253-1 at 3. Rather, Kostmayer argues, the barges were stationary work platforms because they were stationary at all times worked on by Solomon, had no independent means of self-propulsion, and Solomon was not working on them the few times they were moved. R. Doc. 253-1 at 4-5. Kostmayer argues that because Solomon was not assigned to a vessel, he cannot qualify as a Jones Act seaman. R. Doc. 253 at 5.

Marquette responds in opposition to Kostmayer's motion. R. Doc. 261. In its response, Marquette offers many of the same arguments regarding seaman status that it offered in its own motion for partial summary judgment. In addition, Marquette argues that the barge on which Plaintiff Solomon was working at the time of the accident is a vessel. R. Doc. 261 at 2. Marquette argues that because the barge was practically capable of navigation and appeared to be capable of navigation to the casual observer, the barge qualifies as a vessel under the Jones Act.

R. Doc. 261 at 3.

## III. LAW & ANALYSIS

### a. Summary Judgment Standard (Fed. R. Civ. P. 56)

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the

4

party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### b. Standard for Establishing Seaman Status

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The Jones Act does not define the term "seaman," therefore, courts have been left to determine exactly which maritime workers are entitled to the special protections that the Jones Act provides. *See Chandris v. Latsis*, 515 U.S. 347, 354 (1995). The Supreme Court has determined that seaman status requires: (1) that the employee's duties contribute to the function of a vessel in navigation (or identifiable group of vessels) or to the accomplishment of its mission and (2) that the connection be substantial in terms of both its nature and duration. *See Chandris*, 515 U.S. at 368. The purpose of the test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id*. at 371.

The "substantial connection" inquiry includes a temporal element. *Chandris*, 515 U.S. at 371. In *Chandris*, the Supreme Court adopted the Fifth Circuit's "rule of thumb": "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id*. The Court warned, however, that this figure is a "guideline" and that "departure from it will certainly be justified in appropriate cases." *Id*. The Court must still examine the "total circumstances of an individual's employment" to determine "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id*. at 369.

Necessary for finding seaman status is the existence of a vessel. *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995). There are two Supreme Court cases particularly relevant to this determination. First, in *Stewart v. Dutra Construction Company*, the Court held that a harbor dredge was a vessel because it was *capable* of being used to transport equipment and persons over water. 543 U.S. 481 (2005). There, the Court reasoned that the law "requires only that a watercraft be 'used, as a means of transportation on water' to qualify as a vessel. It does not require that a watercraft be *primarily* used for that purpose." *Id.* at 495. The Court distinguished the harbor dredge, which had not been "rendered practically incapable of maritime transport," from "fixed structures" that had been *permanently* moored. *Id.* at 493, 496. The Court rejected the argument that the dredge needed to be in motion at the time of plaintiff's injury to be a vessel and held that the relevant question is "whether the watercraft's use as a means of transportation on water is a practically possibility or merely a theoretical one." *Id.* at 496 (internal quotations omitted).

Second, in *Lozman v. City of Riviera Beach, Florida*, the Court confirmed that the phrase "capable of being used" encompasses "practical" possibilities, not just "theoretical" ones. 568 U.S. 115, 121 (2013). The Court further noted that "transportation" involves "the conveyance (of things or persons) from one place to another." *Id.* Accordingly, the test formulated by the Court is whether "a reasonable observer, looking to the [structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Id.* Under this test, the Court held that a "floating home" was not a vessel, as it had no rudder or steering mechanism, had an unraked hull, and was incapable of self-propulsion. *Id.* Additionally, in reviewing past cases, the *Lozman* Court noted the distinction between a structure that is "regularly, but not primarily, used (and designed in part to be used) to transport workers and equipment over water" and a structure that is "not designed (to any practical degree) to serve a transportation

6

function and did not do so." *Id.* at 125. The first type of structure is a vessel, while the second type is not.

The Court is unable to hold as a matter of law that the barge is not a vessel based on the cases cited by Kostmayer. All of those cases predate *Stewart*, which rejected the idea that "a structure's locomotion at any given moment" is important in determining whether the structure was a vessel "in navigation" for the purpose of a Jones Act case. 543 U.S. at 496. Therefore, it is not dispositive that the barge in this case was not moving at the time Plaintiff Solomon worked on it. Rather, in order to determine whether the barge is a vessel, the Court must examine whether "a reasonable observer, looking to the [barge's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Lozman*, 568 U.S. at 121.

Here, the barge is clearly distinguishable from the floating home considered and rejected by the *Lozman* Court, as the barge is a generic barge, originally designed to transport cargo on rivers. While the barge was fitted with a man lift and cherry picker for it particular use in dock construction, this does not change its overall design or ability to transport persons and cargo on navigable waters. Additionally, evidence shows that the barge did move along the bank of the river during construction. Plaintiff Solomon testified that he and his fellow crew members were on the barge when it was moved into position to perform various construction tasks. Therefore, because it remained practically cable of being used as transportation on water and at all times appeared to be a standard navigable barge, the Court finds that the MS ASHLEY is a vessel for Jones Act purposes.

Additionally, the majority of Plaintiff Solomon's work was completed on the barge. His job entailed working from the barge to replace old material in order to construct a new dock.

7

Because the mission of the MS ASHLEY at the time was dock construction, Plaintiff Solomon was certainly contributing to the accomplishment of this mission. Furthermore, Plaintiff Solomon had a substantial connection to the vessel because the majority of his work was done on the barge and he worked on the barge for approximately three months. However, for Plaintiff Solomon this was a new job and while he stated in deposition testimony that he always worked off of the man lift barge or crane barge the nature and extent of Solomon's work still needs some fleshing out. For these reasons, the Court cannot find as a matter of law that Plaintiff Solomon is not a Jones Act seaman, but finds that this decision is fact-laden and best resolved at trial.

    **c. Borrowed Employee Standard**

The "borrowed servant" doctrine espouses the theory that "[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." *Total Marine Servs., Inc. v. Director, OWCP*, 87 F.3d 774, 777 (5th Cir. 1996) (quoting *Standard Oil Co. v. Anderson*, 212 U.S. 215, 220 (1909)). The Fifth Circuit has established nine factors to be considered when determining borrowed employee status. *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312–13 (5th Cir. 1969); *see also Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244, modified, 841 F.2d 572 (5th Cir. 1988); *Gaudet v. Exxon Corp.*, 562 F.2d 351, 355 (5th Cir. 1977). The factors for evaluation include: (1) who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation; (2) whose work is being performed; (3) was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer; (4) did the employee acquiesce in the new work situation; (5) did the original employer terminate his relationship with the employee; (6) who furnished the tools and place for

performance; (7) was the new employment over a considerable length of time; (8) who had the right to discharge the employee; and (9) who had the obligation to pay the employee?

No single factor is controlling, although the Fifth Circuit recognized in *Brown v. Union Oil Co. of California* that the first element, control, has often been the primary focus. 984 F.2d 674, 676 (5th Cir. 1993). In the present case, Marquette argues that the key factors dictate a finding that Plaintiff Solomon fits the borrowed employee designation. Kostmayer does not respond to this argument. In deposition testimony, Plaintiff Solomon stated that, regarding all of his work, he was supervised and directed by Kostmayer. He also testified that all of his work related to the construction of a new dock for Kostmayer. Additionally, all vessels and equipment use to complete his work were provided by Kostmayer. For these reasons, it is clear that Kostmayer was in control of Plaintiff Solomon's work and that this work was performed for Kostmayer. After reviewing these material facts, none of which appear in dispute, the Court concludes that summary judgment is appropriate and that the factors predominate in favor of placing Solomon within the scope of the "borrowed servant" doctrine with Kostmayer as his borrowed employer.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Partial Summary Judgment filed by Marquette Transportation Company, LLC, R. Doc. 252, is hereby **GRANTED IN PART** as described above.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Kostmayer Construction, LLC, R. Doc. 253, is hereby **DENIED**.

New Orleans, Louisiana, this 30th day of January, 2018.

_____
UNITED STATES DISTRICT JUDGE